NO. 10-14-00156-CR   **1348-15**

IN THE

FILED IN
COURT OF CRIMINAL APPEALS

DEC 2C 2015

Abel Acosta, Cle...

# COURT OF CRIMINAL APPEALS

# OF TEXAS

ORIGINAL

MICHAEL DON POGUE
                        Petitioner

V.

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 2 1 2015

Abel Acosta, Clerk

THE STATE OF TEXAS
                    Respondent

Petition in Cause NO. 10-14-00156-CR
From the 413TH District Court, Johnson
County, Texas Cause No. F48332

and the

Court of Appeals for the
Tenth District of Texas

# PETITION FOR DISCRETIONARY REVIEW

MICHAEL DON POGUE, pro se
TDCJ # 1932517
Polunsky Unit
3872 F.M. 350 S.
Livingston, TX 77351

NO ORAL ARGUMENT
    REQUESTED

# TABLE OF CONTENTS

Index of Authorities _____ iii
Statement of the Case _____ 2
Procedural History _____ 2
Question For Review No. 1 _____ 3
    Does Legislation allow police to use
    coercive meassures and false evidence to
    gain a statement from a suspect who
    agreed to speak with them?
Question For Review No. 2 _____ 5
    Can Transport officers conduct towards
    appellant in front of prospective jurors violate
    his constitutional right not to appear in custody?
Question For Review No. 3 _____ 6
    Can a defendants sentence be orally pro-
    nounced in his presence and be cumulated
    on another day?
Prayer for Relief _____ 7
Appendix _____ 9

# INDEX OF AUTHORITIES

## CASE LAW

Gracia V State   308 S.W. 3d 62, 64-65_____6

Gracia V State   919 S.W. 2d 370_____3

Long V State   823 S.W. 2d 259_____5

Madding V State   70 S.W. 3d 131_____6

Martinez V State   272 S.W. 615_____4

Nesbit V State   227 S.W. 3d 64_____4

Nethery V State   692 S.W. 2d 686_____4

## STATUTES

Tex. C.C.P. 42.09 _____6

Tex. P.C. 37.09 (a) (z)_____3

NO. 10-14-00156-CR

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

MICHAEL DON POGUE
Petitioner

V

THE STATE OF TEXAS
Respondant

Petition in Cause NO 10-14-00156-CR
From the 413TH District Court, Johnson
Texas and the
Court of Appeals for the Tenth
District of Texas

PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE CROUT OF CRIMINAL
APPEALS OF TEXAS:

MICHAEL DON POGUE petitions the Court to review the
Judgement affirming his conviction for five counts of sexual
assault of a child and one count of indeceny with a child
in Cause No. 10-14-00156-CR.

# STATEMENT OF THE CASE

Appeallant was indicted for twelve counts of sexual assault of a child and Indecency with a child. On May 5, 2013, the State abandoned Counts One, Two, Three, Four, Eight, and Eleven, leaving six counts (R.R. VOl. 3, pp. 4-5). After one day of jury selection, there were not enough potential jury members on the venire panal and the court dismissed the panal (R.R. Vol. 3, p. 251).

On May 8, 2014, Appellant had a hearing on his Motion to Suppress claiming that his statement was not voluntary, and was coerced. The Court denied the Motion to Suppress (R.R. VOl. 4 p. 63).

The jury found Appellant guilty of five counts of Sexual Assault of a Child and one count of Indecency with a Child on May 21, 2014 (R.R. Vol. 7 pp. 51-52).

Appellant requested that a jury instruction be given re-guarding the Motion for Cumulative Sentences (R.R. Vol. 7, pp. 102-103). which was denied.

The jury assessed puinshment a fifteen years in the Texas Department of Criminal Justice and a $5,000.00 fine on each count (R.R. Vol. 7 pp. 128-130)on May 21, 2013.

On May 22, 2013, the state presented its Motion for Cumulative Sentences. Appellant objected to the Motion. The Court. The court granted the motion and made sentences on Counts One through Five cumulative and the sentence on Count six was to be served concurrently with Counts One, Two, and three (R.R. Vol. 8, pp. 8-9). Notice of Appeal was timely given and perfected.

# PROCEDURAL HISTORY

The judgement of Appellant's conviction was entered on May 21, 2013. Appellants notice of appeal was timely filed. On September 17, 2015, the Tenth Court of Appeals issued an unpublished opinion by Justice Rex Davis affirming Appellants conviction. No Motion for Rehearing was filed.

# QUESTION FOR REVIEW NO 1

DOES LEGISLATION ALLOW POLICE TO USE COERCIVE MEASURES AND FALSE EVIDENSE TO GAIN A STATEMENT FROM A SUSPECT WHO AGREED TO SPEAK WITH THEM?

The Reviewing court erred in finding that the coerive meassures used were permissable by police to obtain a statement because appellant agreed to speak with them.

Appellant on May 28, 2013 took a polygraph test. Mr. Woods the examiner told appellant his was deceptive. (R.R. Vol. 4, p 20).

Mr. Woods left the room and Det. Bagwell entered in the room and read appellant his miranda rights and asked if he would speak with him, he agreed. Bagwell began the interveiw with "Between J.E. statement and the results of the test, the evidence is overwhelming your guilty" (R.R. State's Exhibt 2, Audio Recording).

Here the appellant believes the polygraph result is an element that can be used against him in court. He received miranda warnings before the exam and signed a release to have the results go to the police. (R.R. State's Exhibt 2 of May 8, 2014). Under those warnings and Bagwells statement at the beginning of the interview, appellant believed the test would be used in court against him.

Det. Bagwell did not falsify, tamper, or alter a document or physical evidence under Tex. P.C. 37.09. He did present a polygraph test and refered to it as evidence. Bagwell then violated Tex. P.C. 37.09 (a)(2) when he presents "anything" as evidence knowing it's not. Bagwell also in the interview told appellant that the test doesn't lie (R.R. State's Exhibt 2, Audio Recording).

Appellant under this pressure gave a statement to benefit his character because the test would show him as a lair and he said no one likes a liar. Gracia V State 919 S.w. 2d 370 suspect gave a statement for some benefit to his character.

Pg 3

The police tactics used by Bagwell followed by the immediate interrigation after the polygraph test is a coercive meassure see Martinez V State 272 S.W. 3d 615, 629.

Bagwell failed to tell appellant the test was not evidence and inadmissable in court see Nesbit V State 227 S.W. 3d 64, 66 quoting Nethery V State 692 S.W. 2d 686, 700, officers had the responsibility to inform appellant that the test results could not be used at trial and any mention of the test is prohibited.

Appellant did wavie his rights before the test and before the interrigation, his wavior does not allow police to violate his rights and the law by presenting false evidence and using coercive meassures to produce a statement. Without these violations the outcome of the interrigation and trial would have been different.

# QUESTION FOR REVIEW NO. 2

CAN TRANSPORT OFFICERS CONDUCT TOWARDS APPELLANT IN FRONT OF PROSPECTIVE JURORS VIOLATE HIS CONSTITUTIONAL RIGHT NOT TO APPEAR IN CUSTODY

## ARGUMENT

The reviewing Court held it was not harmful to the Appellant and held that the conduct of the Transport officers was not improper.

During a break in the voir dire as the baliff and Judge Bosworth were not present, prospective jurors witnessed the transport officers stand on both sides of the appellant as he was in custody. This gave the impression to the prospective jurors he was in custody, as they discussed who was going to watch him first while they went to the bathroom ( R.R. VOl 5, pp. 175,176).

Here the transport officers, who are not uniformed deputies. were dressed in "Johnson County Correctional Facility" uniforms. It was clear to anyone they transport and guard prisoners, not for courtroom security. They're apperance and conversation in front of the prospective jury panal gave the impression the appellant was in custody ( R.R. VOl 5, pp. 176-177)

Appellant asked the court to review the cameras to show the court the conduct of those officers. The Reviewing Court erred in agreeing that the trial court did not abuse its discretion by dening appellants request. This holding by the reviewing court was inconstitant with Long V State 823 S.W. 2d 259 where a defendant is harmed by restraints because it robs him of his Constitutional presumption of innocence.

Reviewing court based its decision on that it was unknown if prospective jurors heard the conversation. The discussion by the court and attornies show they did (R.R. VOL 5, pp. 177-178).

Pg 5

# QUESTION FOR REVIEW NO. 3

## CAN A DEFENDANT'S SENTENCE BE ORALLY PRONOUNCED IN HIS PRESENCE AND BE CUMULATED ON ANOTHER DAY?

The reviewing court based its opinion that the appellant's sentence was not orally pronounced until May 22, 2014 in his presences. The court failed to apply Tex. C.C.P. 42.09 Sec. 1, and failed Maddling V State 70 S.W. 3d 107, 110 where a defendants sentence begins to start the day it is pronouced. The records show defendants sentence was pronounced in his presence and judgement was entered on May 21, 2014.

On May 21, 2014 during the punishment phase of the trial, the jury sentences appellant to 15 years on all counts. Judge Bosworth at that time pronounced appellants sentences in his presence (R.R. VOL. 7 pp. 128-130), (Docket Book Report pp. 3;4). At that time it was made known to the appellant the length of his sentences and where confinement would be.

Appellants sentences where pronounced in the sentencing phase of the trial. The punishment phase is the sentencing phase see Gracia V State 308 S.W. 3d 62, 64-65.

Appellant began serving his sentence at the adjourment of the court and could not have them cumulated the next day. The judge should have made the order at the pronouncement of the sentence see Maddling V state 70 S.W. 131 Sentence and Punishment 1064.

# PRAYER FOR RELIEF

For the foregoing reasons stated, the appellant's constitutional rights were violated and his was denied a fair trial in Cause No. F48332. Therefore appellant prays that this court grant his petition for discretionary Review and upon reveiwing the judgement entered below, reverse this Cause and remand it for new trial.

Respectfully submitted

Michael Don Pogue, pro se
TDCJ # 1932517
Polunsky Unit
3872 F.M. 350 S.
Livingston, TX 77351

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review has been forwarded by U.S. mail, First Class, Postage Paid to Attorney for the State, Dale Hanna, at 204 S. Buffalo Ave., Suite 209, Cleburne, Texas, 76033 and to the State Prosecting Attorney, at P.O. Box 1748, Austin, Texas 78767, and was placed in the prision mail Box on this the 14TH day of December, 2015.

Michael Pogue
Appellant, pro se

I, Michael Don Pogue, TDCJ # 1932517, being presently incarcerated in the Polunsky Unit of the Texas Department of Criminal Justice in Polk County, Texas. Verify and declare under penelty of prejury that the foregoing statements are true and coorrect, Executed on this the 14TH day of December, 2015.

Michael Pogue #TDCJ
1932517

# APPENDIX



# TENTH COURT OF APPEALS

Chief Justice
*Tom Gray*

Justice
*Rex D. Davis*
*Al Scoggins*

McLennan County Courthouse
501 Washington Avenue, Rm 415
Waco, Texas 76701-1373
Phone: (254) 757-5200      Fax: (254) 757-2822

**Clerk**
*Sharri Roessler*

September 17, 2015

In accordance with the enclosed Memorandum Opinion, below is the judgment in the numbered cause set out herein to be entered in the Minutes of this Court as of the 17th day of September, 2015.

10-14-00156-CR    MICHAEL DON POGUE v. THE STATE OF TEXAS - ON APPEAL FROM THE 413TH DISTRICT COURT OF JOHNSON COUNTY - TRIAL COURT NO. F48332 – AFFIRMED - Memorandum Opinion by Justice Davis:

"This cause came on to be heard on the transcript of the record of the Court below, and the same being considered, because it is the opinion of this Court that there was no error in the judgment, it is ordered, adjudged and decreed by the Court that the judgment be in all things affirmed, and that the appellant pay all costs in this behalf expended and that this decision be certified below for observance."



IN THE
TENTH COURT OF APPEALS

No. 10-14-00156-CR

MICHAEL DON POGUE,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 413th District Court
Johnson County, Texas
Trial Court No. F48332

## MEMORANDUM OPINION

A jury convicted Appellant Michael Don Pogue of five counts of sexual assault of a child and one count of indecency with a child and assessed his punishment at fifteen years' imprisonment and a $5,000 fine for each count. The trial court ordered the sentences for the sexual-assault-of-a-child counts to run consecutively to each other and the sentence for the indecency-with-a-child count to run concurrently with the sexual-assault-of-a-child counts. This appeal ensued.

## Motion to Suppress

In his first issue, Pogue contends that the trial court erred in denying the motion to suppress his statement because the statement was not made freely and voluntarily.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24;

*Kelly v. State*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 819.

Before trial, Pogue filed a motion to suppress any oral statement given by him on May 28, 2013. He alleged that, on that date, Cleburne Police Detective Sean Bagwell interviewed him at the Wood & Associates Polygraph Service offices and that he made statements during the interview concerning an investigation of sexual assault that allegedly occurred in Johnson County. Pogue alleged, however, that he did not knowingly, intelligently, freely and voluntarily waive the rights set out in section 38.22 of the Code of Criminal Procedure and that the evidence was taken in violation of the United States and Texas Constitutions.

The trial court held a *Jackson v. Denno* hearing. Bagwell testified that he met with Pogue at the police department and explained the allegations against him. Pogue was not under arrest at that time. Pogue denied the allegations against him and agreed to submit to a polygraph examination to prove that he was telling the truth. Bagwell did not threaten arrest, violence, or restraint to get Pogue to agree to take the exam. Bagwell called Wood & Associates and scheduled an appointment for that afternoon. Bagwell did not take Pogue to the exam; Pogue travelled to the exam with his wife and stepson.

Clayton Wood, a polygraph examiner at Wood & Associates, testified that Pogue arrived separately from Bagwell for the polygraph examination. Before the exam, Wood

reviewed a release form with Pogue. The release explained the voluntariness of the polygraph examination, described the different phases of the exam, explained to whom the results would be released, and included a liability waiver. Pogue signed the release. Wood also read Pogue a waiver of rights drafted in accordance with article 38.22 of the Code of Criminal Procedure. Pogue acknowledged that he understood those rights, signed the waiver, and agreed to speak with Wood. Wood then conducted the polygraph exam. Wood did not make Pogue any promises or threaten him, and Pogue did not appear intoxicated, tired, or confused. At the conclusion of the exam, Wood briefly spoke with Pogue about the results and gave Pogue an opportunity to make any additional admissions. Wood then told Bagwell, who was in a separate conference room during the exam, the results of the exam. The results were: "Deception indicated." Wood also observed what appeared to be attempts by Pogue to change his physiological functions during the exam. Bagwell then spoke to Pogue.

Bagwell testified that while the exam was being conducted, he was not able to view or hear anything that was going on. Wood came out of the exam room at one point and told Bagwell that Pogue was using classic countermeasures and that Wood was going to discuss the countermeasures with Pogue and attempt to get a valid exam. After more time passed, Wood came out of the exam room again, said that they did get a valid exam, and said that Pogue showed to be deceptive in answering relevant questions. Wood said that he had talked to Pogue about the results and that Pogue maintained his denial of the allegations. Bagwell then went into the room where Pogue was waiting and asked him for consent to sit and talk with him. Pogue consented. Bagwell also read

Pogue his *Miranda* warnings and made sure that Pogue understood that he was not under arrest or detained and that Bagwell could not compel him to speak. Pogue then made some admissions to Bagwell that corroborated the allegations made against him. Bagwell took a phone call from the district attorney's office and confirmed that there were no issues with making an arrest. At that point, Bagwell decided that Pogue was no longer free to leave but did not arrest Pogue immediately. Bagwell continued the interview but then eventually arrested Pogue. An audio recording of the interview was admitted into evidence.

Pogue testified that he agreed to go to the police station on May 28, 2013, and agreed to take a polygraph exam. He drove himself to the exam, along with his wife and stepson. At the conclusion of the exam, Wood left the room, then came back, and told him that he was being deceptive. Wood never mentioned anything about countermeasures. Bagwell then came in, and Pogue agreed to talk to him. Pogue said that Bagwell basically told him that if he did not do something that day, Pogue would never have a chance to defend himself or make himself believable to anyone. Bagwell also told Pogue that he appeared arrogant and selfish and that the evidence was overwhelming because of the alleged victim's statement and the results of the polygraph. Pogue stated that he felt pressure to go along with what Bagwell was saying to benefit himself. He did not feel like he could leave or that the interview was voluntary.

The trial court denied Pogue's motion to suppress and made the following findings of fact and conclusions of law:

The Court finds that on May 28, 2013, the Defendant, Michael Don Pogue, met with Clayton Wood at Wood's Polygraph Service in Arlington, Tarrant County, Texas. The Defendant, arrived at Wood's Polygraph on his own accord and was not in police custody at the time he arrived. The Defendant was then interviewed by Clayton Wood. The Defendant was not in custody during the course of this interview or at the conclusion of the interview. When the interview with Clayton Wood concluded, the Defendant was interviewed by Detective Sean Bagwell of the Cleburne Police Department and provided Detective Bagwell with an oral statement (State's Exhibit No. 1). Before providing this statement, Detective Bagwell read the Defendant his rights in accordance with Article 38.22 Section 2(a) of the Texas Code of Criminal Procedure. After hearing these rights, the defendant knowingly, intelligently, and voluntarily waived those rights directly or implicitly and agreed to talk with Detective Bagwell and did then and thereafter provide an oral statement to Detective Bagwell. This oral statement, including the reading and subsequent waiver of the Defendant's rights, were recorded by a device that was capable of making an accurate recording. The Defendant was not in custody during the course of this interview. After the Defendant provided this statement, he was placed into custody. The court finds that the Defendant was not in custody when he provided this oral statement, State's Exhibit No. 1, to Detective Bagwell.

. . . .

The Defendant, Michael Don Pogue, did knowingly, intelligently and voluntarily provide an oral statement, State's Exhibit No. 1, to Detective Sean Bagwell, on May 28, 2013.

Article 38.21 of the Code of Criminal Procedure provides: "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). A defendant may claim that his statement was not freely and voluntarily made, and thus may not be used as evidence against him, under several different theories: (1) article 38.22, section 6—general voluntariness; (2) *Miranda,* as expanded in article 38.22, sections 2 and 3; or (3)

the Due Process Clause. *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008).

A statement may be involuntary under the Due Process Clause or *Miranda* only when there is police coercion or overreaching. *Id.* at 169-70. Trickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). The court of criminal appeals in *Oursbourn* noted that the United States Supreme Court in *Colorado v. Connelly* collected cases in which courts found statements involuntary under *Miranda* or the Due Process Clause. *Oursbourn*, 259 S.W.3d at 170 (citing *Colorado v. Connelly*, 479 U.S. 157, 163 n.1, 107 S.Ct. 515, 520 n.1, 93 L.Ed.2d 473 (1986)). These cases involve police overreaching and involve fact scenarios such as the following:

> (1) the suspect was subjected to a four-hour interrogation while incapacitated and sedated in an intensive-care unit; (2) the suspect, while on medication, was interrogated for over eighteen hours without food, medication, or sleep; (3) the police officers held a gun to the head of the wounded suspect to extract a confession; (4) the police interrogated the suspect intermittently for sixteen days using coercive tactics while he was held incommunicado in a closed cell without windows and was given limited food; (5) the suspect was held for four days with inadequate food and medical attention until he confessed; (6) the suspect was subjected to five days of repeated questioning during which police employed coercive tactics; (7) the suspect was held incommunicado for three days with little food, and the confession was obtained when officers informed him that their chief was preparing to admit a lynch mob into the jail; (8) the suspect was questioned by relays of officers for thirty-six hours without an opportunity for sleep.

*Id.* at 170-71 (footnotes omitted).

Sections 2 and 3 of article 38.22 apply to an accused's custodial-interrogation statements and provide that only "warned and waived" statements may be admitted. *Id.*

at 171; *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2, 3 (West Supp. 2014). That is, an accused's custodial-interrogation statement is not admissible unless, before making the statement, he received the warnings provided in article 15.17 or article 38.22, section 2(a) or section 3(a) (which incorporate the requirements of *Miranda*), and he knowingly, intelligently, and voluntarily waived those rights. *Oursbourn*, 259 S.W.3d at 171-72; *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2, 3; *see also* TEX. CODE CRIM. PROC. ANN. art. 15.17 (West 2015) (requiring magistrate to give warnings consistent with *Miranda* after accused's arrest).

Under the Court of Criminal Appeals' precedents, section 6 of article 38.22 applies to both an accused's custodial and non-custodial statements. *Id.* at 171. Claims of involuntariness under article 38.22, section 6 can be, but need not be, predicated on police overreaching of the sort required under a due-process analysis. *Id.* at 172. Under articles 38.21 and 38.22, section 6, we may consider, in addition to any allegedly coercive police conduct, factors such as the suspect's youth, intoxication, mental retardation, or other disability that would not raise a federal due-process claim. *Id.* at 172-73. Under articles 38.21 and 38.22, fact scenarios that can raise a state-law claim of involuntariness include the following:

> (1) the suspect was ill and on medication and that fact may have rendered his confession involuntary; (2) the suspect was mentally retarded and may not have "knowingly, intelligently and voluntarily" waived his rights; (3) the suspect "lacked the mental capacity to understand his rights"; (4) the suspect was intoxicated, and he "did not know what he was signing and thought it was an accident report"; (5) the suspect was confronted by the brother-in-law of his murder victim and beaten; (6) the suspect was returned to the store he broke into "for questioning by several persons armed 'with six-shooters.'"

*Id.* (footnotes omitted). "'Voluntariness' under both constitutional and state law doctrines is to be measured according to the totality of the circumstances." *Smith v. State,* 779 S.W.2d 417, 427 (Tex. Crim. App. 1989).

Pogue argues that his statement was involuntary because he was coerced into giving it based on the fact that he failed the polygraph exam. Pogue supports his argument by citing Judge Price's concurring opinion in *Martinez v. State,* 272 S.W.3d 615, 629 (Tex. Crim. App. 2008) (Price, J., concurring), which includes the statement, "A failed polygraph is practically as effective as a coerced confession in so demoralizing a suspect that subsequent *Miranda* warnings will lack their intended efficacy."

In *Martinez*, police arrested Martinez for his involvement in a robbery and murder. *Id.* at 617-18. He was not given *Miranda* warnings upon arrest; nevertheless, he was brought to police headquarters and questioned about the crimes, which he denied knowing anything about. *Id.* at 618. Officers then took Martinez to a police polygrapher who spent three to four hours administering a polygraph test to him. *Id.* After the polygraph test, officers again took Martinez into custody, informed him that he had failed the polygraph test, and took him to municipal court, where a magistrate gave him *Miranda* and other statutory warnings for the first time. *Id.* Upon Martinez's "prompt return" to the central holding station, officers again questioned him about the robbery and murder. *Id.* Officers repeated the *Miranda* warnings, and Martinez gave a videotaped statement regarding the incident in which he made incriminating statements. *Id.* The Court of Criminal Appeals concluded, however, that "the absence of *Miranda*

warnings at the beginning of the interrogation process was not a mistake based on the interrogating officers' mistaken belief that appellant was not in custody, but rather a conscious choice." *Id.* at 624. The court held that because no curative measures were taken to offset the damage done by the failure to warn at the outset, the second statement given to the police was involuntary and should have been excluded. *Id.* at 627.

This case is distinguishable from *Martinez*. Here, Pogue had not been arrested when he agreed to take the polygraph exam. In fact, he drove himself to the location to take the exam. Also, Pogue was advised of his *Miranda* warnings both before taking the polygraph exam as well as before the interview with Bagwell, and Pogue elected to proceed. We conclude that, based on the totality of the circumstances, the trial court did not abuse its discretion in concluding that Pogue's statement was voluntarily given. Because we have concluded that the trial court did not abuse its discretion in concluding that Pogue's statement was voluntarily given, we hold that the trial court did not err in denying Pogue's motion to suppress his statement. We overrule Pogue's first issue.

## Objection to Strike Venire Panel

In his second issue, Pogue contends that the trial court erred in overruling his objection to strike the venire panel.

The relevant facts are as follows. Outside the presence of the venire panel just before the jury was impaneled, the following exchange took place:

> [Defense Counsel]: Okay. Let me read [Pogue's objection] into the record: That the Defendant would ask the Court to strike the panel based on the conduct of the transport officers in front of the venire or the prospective jurors that could have indicated that he was in custody. Specifically, that they stood beside him on either side, his left and right side,

while prospective jurors were still in the courtroom, and discussed whether or not who was going to watch the Defendant while they went to the bathroom, or something like that. And that's all I have on it.

[Prosecutor]: Can I address the Court?

THE COURT: Please.

[Prosecutor]: We would ask the record to reflect that the transport officer was seated behind the Defendant over here next to the wall in an inconspicuous position, and there is no evidence that any jurors heard any such conversations nor that the conversations ever took place. And the Court may have some observations on what the Court's observed during the proceedings about - -

THE COURT: The placement of transport officers and the Deputy in this courtroom during a trial is pursuant to a plan. It's not a random thing. It's not any different in this trial than any other trial. Transport officers, one has been stationed at the back of the room which is my requirement, and the other one has been here in the chair next to the wall. And my Deputy has actually been on the opposite side of the room from where he's normally stationed at his desk. He's been on the opposite side of the room over by the door where the Jury is, but they're spread out, one on the left side of the courtroom, one at the back of the courtroom, one by the Jury door, which is where I like for them to be. They've been quiet. They've not said anything. They've not approached the Defendant.

In other cases I've had twice as many transport officers and Deputies in the courtroom when a situation requires it. They're here for a number of reasons. They're here primarily to protect Mr. Pogue from anybody in the audience who decides they want to do him any harm. That's the primary goal that I have for them is when we get into a situation where we might have relatives of someone who perceives there to be a victim. I don't want them coming across the railing and coming into a situation where they would hurt Mr. Pogue. I have no - - from any of my dealings with Mr. Pogue, I have no real concerns about his threat to anybody's safety, but they're also here for that particular reason if that should become necessary. So I've got a very standard arrangement. I would overrule the objection.

. ....

[Prosecutor]: Judge, we would also ask the record to reflect, and maybe the Court did that while I was thinking, you may have been

talking, but the Defendant is in plain clothes, he's not handcuffed nor shackled in any shape, form or fashion, and is - - appears to be a person not in custody as far as his dress and the lack of handcuffs or shackles.

THE COURT: That's correct. In different cases where I've had - - assessed the situation to be of a different level of threat, I have required restraints on the legs of Defendants or a shock belt that I use for people who are - - have demonstrated a reluctance to control themselves in the courtroom. Neither of those devices are being used today.

Unlike the shackling and handcuffing of a defendant at trial, or the trying of a defendant in prison garb, the presence of armed guards during a trial is not inherently prejudicial and thus a defendant who wishes to assert error in the trial court must demonstrate actual prejudice. *Sterling v. State*, 830 S.W.2d 114, 117-18 (Tex. Crim. App. 1992) (citing *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986)). Pogue argues that the deputies standing on either side of him discussing which one was going to watch him while the other went to the bathroom prejudiced the venire panel because the panel then knew that he was in custody. We disagree. Assuming Pogue's allegations are true and that prospective jurors were still in the courtroom during the deputies' discussion, the record does not indicate that the prospective jurors heard the discussion. The record in this case does not reflect that the deputies caused any distraction or confusion to the venire panel. We thus conclude that the trial court did not err in overruling Pogue's objection to strike the venire panel. *See id.* at 118. We overrule Pogue's second issue.

### Improper Jury Argument

In his third issue, Pogue contends that the trial court erred in overruling his objection to the State's closing argument. Pogue argues that the State's closing argument

improperly shifted the burden of proof to him. The standard of review for a trial court's ruling on an objection asserting improper jury argument is abuse of discretion. *Whitney v. State*, 396 S.W.3d 696, 705 (Tex. App.—Fort Worth 2013, pet. ref'd).

The relevant exchange was as follows:

> [Prosecutor]: ....
> There was discussion about - - there was discussion about witnesses to the case and who wasn't called and who was called. [Defense Counsel] mentioned that why doesn't the State call the Defendant's sons, Jimmie and Dale and whoever else is in the house. Well, as [Defense Counsel] also mentioned, the State and the Defense have equal subpoena power. Equal subpoena power. They're relatives of the Defendant, so if they had anything good to say for the Defendant, what do you think would have happened?
>
> [Defense Counsel]: Your Honor, I object to that. That's a[n] unlawful shifting of the burden of proof to the Defendant, and I object to it.
>
> [Prosecutor]: Response. Equal subpoena power. He has the power to call the witness as well.
>
> THE COURT: Overruled.
>
> [Prosecutor]: I guarantee you, use your common sense, who has access to those individuals? If they had anything good to say, they would have been here for him.
> ....
> In regard to the pills and the medicine, he never told Detective Bagwell that he was on pills or medicine that day. And, in fact, like [Prosecutor] mentioned, Defense has equal subpoena power. They can subpoena documents. They can subpoena pharmacy records to show that he had a prescription. We never saw that. We never even heard of any sort of ailment that he would have - -
>
> [Defense Counsel]: Your Honor, I object to him unfairly shifting the burden of proof to the Defendant to prove his innocence. I object to it.
>
> THE COURT: The Jury Charge has the specific instructions on the burden of proof. Overrule.

[Prosecutor]: The Defense has the power to subpoena these records, and the Defense brought it up in opening. There's no evidence, no evidence whatsoever. Again, I guarantee you, if it were there, you would see it, and we didn't see records of him receiving his prescriptions because they don't exist.

A prosecutor may comment on a defendant's failure to produce witnesses and evidence so long as the comment does not fault the defendant for exercising his right not to testify. *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000). In this case, Pogue waived his right not to testify and testified during the guilt/innocence phase. Furthermore, the prosecutor's comments were directed toward Pogue's ability to subpoena his sons as witnesses and to subpoena his pharmacy records, not toward Pogue's testimony or lack thereof. We therefore conclude that the trial court did not abuse its discretion by overruling Pogue's objection. We overrule Pogue's third issue.

## Cumulative Sentences

In his fourth issue, Pogue contends that the trial court erred in overruling his objection to assessing cumulative sentences.

Before trial, the State filed a motion for cumulative sentences. On May 21, 2014, the jury returned its punishment verdict. The court read the verdict in open court and accepted the verdict. The trial court released the jury, and the following exchange then took place:

THE COURT: I prefer we set the sentencing at 9 a.m., that way I can be prepared for the pending motion [for cumulative sentences] and each side will have an opportunity to make an argument on that.

[Defense Counsel]: Yes, sir.

Pogue v. State                                                                                    Page 14

THE COURT: So the sentencing for Mr. Pogue will be at 9 a.m. in the morning.

THE COURT: We'll be in recess until tomorrow morning at 9.

The next day, on May 22, 2014, the trial court conducted the sentencing hearing. The trial court heard brief arguments on the State's motion for cumulative sentencing and then stated as follows:

> THE COURT: Mr. Pogue, please stand. This case was tried before this Court and a Jury this week. Michael Don Pogue came before the Court and a Jury and entered a plea of not guilty to the six counts against him in the indictment. The evidence was submitted and the Jury was charged by this court, and after deliberating, the Jury returned a verdict of guilty on each count charged against you. The Court has - - accepts the Jury's verdict and has accepted the Jury's verdict, and the Punishment Phase was heard. The evidence was submitted, the Jury was charged and returned a verdict assessing your punishment. The Jury did not recommend probation. The Court accepts the Jury's verdict.
>
> It is the judgment of this Court that you are guilty of each offense alleged against you in the indictment. You should be punished in accordance with the Jury's instructions and the Jury's verdict.
>
> Do you have any legal reason why sentence should not be pronounced against you at this time?
>
> [Defense Counsel]: Without surrendering my objections, otherwise, no, sir.
>
> THE COURT: Finding nothing to bar the pronouncement of the sentence against you, I hereby sentence you in Count One to a term of 15 years in the Texas Department of Criminal Justice Institution Division. I further assess a fine of $5,000. That sentence will start today and you will be given credit against that sentence for any time that you have served to date.
>
> With regard to Count Two of the indictment, I sentence you to a term of 15 years in the Texas Department of Criminal Justice Institution Division. The sentence in Count Two will start when the sentence in Count One ceases to operate. I further assess a fi[n]e of $5,000.
>
> With regard to Count Three in the indictment, I sentence you to a term of 15 years in the Texas Department of Criminal Justice Institution

Division. The sentence in Count Three will start when the sentence in Count Two ceases to operate. I further assess a fine of $5,000 in Count Three.

With regard to Count Four in the indictment, I sentence you to a term of 15 years in the Texas Department of Criminal Justice Institution Division. The term in Count Four will start when the term in Count Three ceases to operate. I further assess a fine of $5,000 in Count Four.

With regard to Count Five in the indictment, I sentence you to a term of 15 years in the Texas Department of Criminal Justice Institution Division. The sentence in Count Five will start when the sentence in Count Four ceases to operate. I further assess a fine of $5,000 with regard to Count Five.

With regard to Count Six, I'll sentence you to a term of 15 years in Texas Department of Criminal Justice Institution Division, and the sentence in Count Six will run concurrent with Count One, Two and Three, if need be. I further assess a fine of $5,000.

At this time, I'll remand you into the custody of the Johnson County Sheriff for transport to the Texas Department of Criminal Justice Institution Division to carry out your sentence.

That same day, the trial court signed an order cumulating sentences in accordance with the oral pronouncement. On May 23, 2014, the trial court signed judgments imposing the sentences orally pronounced.

If a trial judge wants to "stack" a defendant's sentences so that they run consecutively, he must make such an order at the time and place that sentence is orally pronounced. *Ex parte Madding*, 70 S.W.3d 131, 136 (Tex. Crim. App. 2002). Once the defendant is removed from the courtroom and begins serving his sentence, it is too late to cumulate. *Id.*

Pogue argues that the trial court did not have authority to cumulate his sentences because he began serving his sentence on May 21st when he left the courtroom after the trial court read the jury's verdict and accepted it. We disagree. "The sentence is that part of the judgment ... that orders that the punishment be carried into execution in the

manner prescribed by law." TEX. CODE CRIM. PROC. ANN. art. 42.02 (West 2006). While the trial court read the jury's verdict and accepted it on May 21st, the trial court did not orally pronounce the sentence in Pogue's presence until May 22nd. In the oral pronouncement, the trial court ordered the sentences for the sexual-assault-of-a-child counts to run consecutively to each other. The trial court then entered the same sentences in its written judgment. We conclude that the trial court did not err in assessing cumulative sentences. We overrule Pogue's fourth issue.

Having overruled all of Pogue's issues, we affirm the trial court's judgments.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed September 17, 2015
Do not publish
[CRPM]



Michael Pogue 1932517
Polunsky Unit
3872 F.M. 350 S.
Livingston, TX 77351

Abel Acosta
Clerk of the
Court of Criminal Appeals
P.O. BOX 12308
Austin, Texas 78711